UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ALLEN LESURE,

      Petitioner,      Case No. 2:22-cv-11725
                  Hon. Victoria A. Roberts
v.

RANDEE REWERTS,

      Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Robert Allen Lesure filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Lesure was convicted of first-degree child abuse and sentenced to 15-35 years in prison after a jury trial held in the Wayne Circuit Court. The habeas petition raises two claims involving an outside contact with a juror, and one claim challenging the scoring of the sentencing guidelines. The Court denies the petition because the claims do not merit relief.

I.

The facts surrounding Lesure's conviction stem from allegations that he and his girlfriend abused his girlfriend's four-year-old daughter. The girl was rescued by her eleven and thirteen-year-old sisters from a basement. The victim suffered numerous internal and external injuries after being tied to a chair and beaten. A physician testified that the injuries were potentially life-threatening without timely medical treatment. *See People v. Turner*, No. 348873, 2020 WL 4914668, at *1-2 (Mich. Ct. App. Aug. 20, 2020).

Lesure's principal habeas claims center around an incident occurring at the courthouse during a break at trial. After the prosecutor called its first child witness, and after that witness was subjected to a lengthy cross-examination, the trial court excused the jury for lunch.  (ECF No. 8-10, pp. 5-123.)

When proceedings resumed, the prosecutor informed the court that another prosecutor from his office, McGee, was discussing her impressions of the child's testimony with a child advocate while in the courthouse elevator without realizing that a juror was inside the elevator. (*Id.*, p. 124.) The court asked McGee to describe the incident. McGee stated that when she entered the elevator, she commented to the advocate, "[t]hat's a lot for an 11-year-old girl." (*Id.*, p. 125.) Another person from the prosecutor's office in the elevator noticed Juror No. 8 was also present and told McGee "[w]e can't talk about this." (*Id.*) McGee explained that she did not see that the juror was in the elevator when she made the comment. (*Id.*)

The court questioned Juror No. 8 outside the presence of the other jurors. The juror stated that she was on the elevator and overheard McGee start to comment on something that occurred at trial by stating something about "[t]hose questions" or "[t]hat questioning." Someone else on the elevator interrupted and said, "no, wait until we go upstairs." (*Id.* pp. 128-129.) The juror said she did not hear or remember anything else about what McGee said, and that it did not impact her. She explained, "No. that has absolutely nothing to do with me. When she said it, I actually tuned them out." (*Id.*, p. 128.)

Defense counsel thereafter moved for a mistrial, but the motion was denied. Counsel objected to the court's proposed remedy of excusing the one juror. The court

2

nevertheless excused the juror. Before she was excused, the juror confirmed that she did not tell any of the other jurors about the incident. (*Id.* pp. 125-127; 130-138; ECF No. 8-11, pp. 3-5.)

Following his conviction and sentencing, Lesure filed a claim of appeal in the Michigan Court of Appeals. His brief on appeal raised three claims:

> I. The trial court abused its discretion by denying defense counsel's motion for mistrial, when the one of the jurors overheard a prosecutor commenting on the testimony of one of the child witnesses, while both were on the courthouse elevator, which amounted to prosecutorial misconduct.
>
> II. Mr. Lesure's right to due process was violated by the dismissal of the juror for overhearing a prosecutor comment on the testimony of one of the child witnesses, when the juror indicated that she could set the improper incident aside and fairly decide the case, and defense counsel specifically objected to that juror's dismissal.
>
> III. Mr. Lesure was denied his constitutional due process right to be sentenced on accurate information where offense variables (OV) 3, 10, 14, 17, and 19 were erroneously scored, which created improperly inflated sentencing guidelines and entitles him to a resentencing.

The Michigan Court of Appeals affirmed in an unpublished opinion. *People v. Lesure*, No. 348873, 2020 WL 4914668 (Mich. Ct. App. Aug. 20, 2020). Petitioner filed a pro se application for leave to appeal in the Michigan Supreme Court that raised the same claims. The Michigan Supreme Court denied leave to appeal by standard form order. *People v. Lesure*, 957 N.W.2d 793 (Mich. 2021)(Table).

II.

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who raise claims previously adjudicated by state courts must "show that the relevant state-court 'decision' (1) 'was contrary to, or involved

3

an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018)(quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010)(internal citations and quotation marks omitted). Ultimately, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Additionally, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

III.

A.

Lesure first claims that the trial court erred in failing to grant a mistrial because of the incident in the elevator. After reciting the standard for granting a mistrial under Michigan law requiring an irregularity that is prejudicial to the rights of the defendant and impairs the right to a fair trial, the Michigan Court of Appeals found that the trial court properly denied the motion because there was no indication that the remaining jurors who deliberated were exposed to an extraneous influence that might have affected the verdict:

4

> The record is equally devoid of any evidence that any juror other than Juror 8 was aware of McGee's comment, or even of the reason why Juror 8 was being separately questioned. McGee and Juror 8 both indicated that no other jurors had been present, and Juror 8 stated that she had not discussed the comment or the reason for her questioning with the other jurors—who did not even inquire. In any event, Juror 8 clearly had only an extremely vague understanding of McGee's comment. After dismissing Juror 8, when the jury was brought back in, the trial court explained only that the trial would proceed with 13 jurors, further stating, "So please everyone stay healthy because we only have one alternate now." The jury would have only received the impression that Juror 8 may have become ill. Therefore, there is no evidence that the jury was exposed to any extraneous influence, much less intentionally exposed to any influence that might have affected its verdict. In other words, the remaining jurors remained oblivious to any perceived controversy. Defendants have failed to show any prejudice that inured to them as a result of the comments. The trial court did not abuse its discretion by denying defendants' motions for a mistrial.

*Lesure*, 2020 WL 4914668, at *6.

Pursuant to the Sixth Amendment, a criminal defendant is guaranteed the right to a trial "by an impartial jury." U.S. Const. amend. VI. "This guarantee requires a jury to arrive at its verdict 'based upon the evidence developed at the trial.'" *Smith v. Nagy*, 962 F.3d 192, 199 (6th Cir. 2020)(quoting *Turner v. Louisiana*, 379 U.S. 466, 472 (1965)). If a trial court is faced with a colorable claim of juror misconduct or an extraneous influence, it "must conduct 'a hearing with all interested parties permitted to participate.'" *United States v. Owens*, 426 F.3d 800, 805 (6th Cir. 2005)(quoting *Remmer v. United States*, 347 U.S. 227, 230 (1954)).

In *Remmer*, the Supreme Court held that a trial court confronted with an allegation of external tampering or contact with a juror during a trial "should determine the circumstances, the impact [of the contact] upon the juror, and whether or not it was prejudicial...." 347 U.S. at 230. Two considerations support a trial court's considerable discretion in deciding how to conduct the inquiry. *United States v. Taylor*, 814 F.3d 340,

5

348 (6th Cir. 2016). First, the trial court is particularly qualified to ascertain the influence and impact of the communication. Second, flexibility permits the trial court to make the inquiry without "'unnecessarily highlight[ing] the [communication] in the eyes of the jurors.'" *Id*. (quoting *United States v. Mack*, 729 F.3d 594, 606 (6th Cir. 2013)).

Here, in accordance with *Remmer*, the trial court inquired about the circumstances and nature of the prosecutor's comment in the elevator that was overheard by a single juror. The inquiry occurred immediately after the break in trial and was performed outside the presence of the other jurors. The court ascertained that only the one juror heard a comment, that the juror was only vaguely aware of what was being discussed, and that the juror did not tell the other jurors about the incident. The juror said that the incident would not affect her impartiality, but erring on the side of caution, the court nevertheless excused her from further service. Excusing the juror ensured that the other jurors would not be made aware of the incident, and the statement by the court to the rest of the jury to explain that Juror No. 8 would not be returning suggested, if anything, that she was being excused due to illness.

With only the juror who overheard the comment excused from further service, there is simply no basis for Lesure to argue, let alone for this Court to find, that the jurors who decided the case were biased or were affected by an extraneous influence. The trial court reasonably denied the motion for a mistrial, and the adjudication of the claim by the Michigan Court of Appeals did not contravene clearly established Supreme Court law.

B.

Lesure's second claim asserts that the trial court violated his due process rights by excusing the juror after she said the incident did not affect her impartiality. After noting

6

the inconsistency of Lesure's first two claims, the Michigan Court of Appeals rejected the argument on the merits because the case was nevertheless decided by a full jury selected by the parties:

> Nothing in the record suggests that any of the seated fourteen jurors were pre-selected to be dismissed as alternates before deliberation. Rather, the trial court stated during its opening instructions that "we will draw lots to decide which of the two of you will be dismissed in order to form a jury of 12."
>
> We find it incongruous for defendants to argue that on the one hand, McGee's comment was so egregious and damaging that it warranted a mistrial, and on the other hand Juror 8—the only juror who was at all aware of McGee's comment—should have remained on the jury. As discussed, there was no evidence that any juror other than Juror 8 was tainted in any way. Although defendants rejected the trial court's offer to dismiss Juror 8, insisting on only a mistrial, the trial court was obligated to refrain from granting a mistrial if, in its discretion, a less-drastic alternative would suffice to protect defendants' interests. *People v. Dry Land Marina, Inc.*, 175 Mich. App. 322, 327 (1989). As discussed, a mistrial was unwarranted. However, it was not unreasonable to "err on the side of caution" by dismissing Juror 8. The other jurors might have become curious as to why Juror 8 had been singled out. The trial was in the early stages and it is unclear how the matter might evolve during the remainder of the proceedings. The court effectively forestalled any such inquiry about Juror 8's absence because based on what the court revealed to the remaining jurors, they could have reasonably concluded that Juror 8 had left for medical reasons.
>
> It is not clear to us that it would have been an abuse of discretion to leave Juror 8 on the jury. However, removing Juror 8 was a reasonable method by which the court could ensure and protect defendants' fundamental right to have a fair and impartial jury consider the evidence. The court had principled reasons for dismissing the juror, particularly considering defendants' concerns that the situation with Juror 8 compromised their ability to receive a fair and impartial trial, including that the juror might reveal the assistant prosecutor's comments to the other jurors. The trial court's decision to err on the side of caution was not outside the range of principled outcomes, so it was not an abuse of discretion.

*Lesure*, 2020 WL 4914668, at *7.

Lesure's claim boils down to the proposition that where a trial court is faced with an improper contact, and the court determines that a mistrial is not warranted, then the

7

court cannot as a lesser remedy dismiss any jurors who were involved in the contact. Yet Lesure cannot point to any clearly established Supreme Court law that bound the trial court to such an all-or-nothing approach.

That is not surprising. Under both Michigan and federal law, a trial court has discretion to dismiss jurors during trial where there is good cause for doing so. *See* MICH. COMP. LAWS § 768.18; FED. R. CRIM. P. 23(b)(2)(B) and 24(c)(1); *United States v. Anderson*, 303 F.3d 847, 853 (7th Cir.2002)(recognizing that "[c]ourts have found [good] cause to dismiss jurors for a variety of reasons, including juror illness or unavailability, and evidence indicating that the juror is no longer able to render an impartial verdict"). No rule of constitutional law requires a court to make a factual finding of actual bias before dismissing a juror under these rules.

Indeed, federal law recognizes that a trial court is in the best position to determine the nature and extent of any alleged juror misconduct and to fashion an appropriate remedy. *United States v. Gaitan-Acevedo*, 148 F.3d 577, 590 (6th Cir. 1998). When the conduct of a juror does not affect the other empaneled jurors, it is proper for the trial court to dismiss the compromised juror and deny a motion for mistrial. *United States v. Davis*, 407 F. App'x. 32, 37 (6th Cir. 2011); *United States v. Ramos*, 861 F.2d 461, 465-66 (6th Cir. 1988); *United States v. Craig*, 823 F. App'x. 231, 243-44 (5th Cir. 2020).

The trial court's decision to err on the side of caution and dismiss the one juror involved in the incident—a decision that retained a full jury selected by the parties to decide the case—was an appropriate and lawful option under the circumstances presented. The claim was reasonably rejected by the Michigan Court of Appeals.

C.

Lesure's third claim asserts that the trial court incorrectly scored some of the offense variables of the sentencing guidelines.

Lesure was sentenced in 2019, after Michigan's sentencing guidelines were made non-mandatory. A misapplication of such advisory guidelines does not implicate federal constitutional concerns. *See United States v. Booker*, 543 U.S. 220, 232 (2005). Whether the trial court correctly scored the offense variables for the guidelines is a state law matter that does not present a cognizable claim for federal habeas review. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003)("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."). The claim is without merit.

Because Petitioner fails to demonstrate entitlement to relief based on any of his habeas claims, the petition will be denied.

IV.

Before Lesure may appeal this decision, the Court must determine whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Lesure must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)(citation and internal quotation marks

9

omitted). The Court finds that reasonable jurists would not debate the resolution of any of Lesure 'sclaims. The Court will therefore deny a certificate of appealability.

The Court also finds that because any appeal of this order would be frivolous, permission to appeal in forma pauperis will likewise be denied. FED. R. APP. P. 24(a).

V.

The Court:

    (1)    **DENIES** the petition for writ of habeas corpus;

    (2)    **DENIES** a certificate of appealability; and

    (3)    **DENIES** permission to appeal in forma pauperis.

**ORDERED**.

                                                      s/ Victoria A. Roberts
                                                      Hon. Victoria A. Roberts
                                                      United States District Judge

Dated: 6/14/2023